UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION (KNOXVILLE)

| | |
|---|---|
| CIC Services, LLC,<br><br>                          *Plaintiff*,<br>   v.<br><br>INTERNAL REVENUE SERVICE;<br>MELANIE KRAUSE, in her official capacity as Acting Commissioner of the Internal Revenue Service; U.S. DEPARTMENT OF TREASURY; and UNITED STATES OF AMERICA,<br>                          *Defendants.* | Case No. 3:25-cv-146-TRM-JEM<br><br>District Judge Travis R. McDonough<br><br>Magistrate Judge Jill E. McCook |

**DECLARATION OF SEAN KING**

I, Sean King, declare as follows:

1. This declaration is based on my own personal knowledge and belief. I am over the age of 18, of sound mind, and otherwise competent to sign this declaration.

2. I am a principal and co-founder of CIC Services, LLC, a Knoxville-based captive insurance management firm. I am also an attorney and CPA (Retired).

3. CIC Services helps small businesses form and manage a captive insurance company to insure a portion of their business-related risk. Many of our clients qualify for §831(b)'s tax incentives that make it cost effective for small and mid-sized businesses to form and operate a captive, and many of them have made the relevant tax election necessary to benefit from the incentives.

4. I am keenly aware of the Final Rule *Micro-Captive Listed Transactions and Micro-Captive Transactions of Interest*, 90 Fed. Reg. 3534 (Jan. 14, 2025). The Final Rule designates most small captives that elect §831(b) as "listed transactions" or "transactions of interest."

5. The Final Rule requires taxpayers associated with captives that fall within either designation to keep detailed records and file reports with the IRS based on those records. The Final Rule

1

also requires "material advisors" of covered captives to keep detailed records and file reports with the IRS.

6. These requirements apply retroactively. Taxpayers associated with covered captives must disclose their participation in transactions that occurred within the last three years. Material advisors of covered captives must disclose their involvement with transactions that occurred within the last six years.

7. The Final Rule's recordkeeping and reporting requirements impose substantial burdens on CIC Services; its affiliates; and its past, present, and future clients.

8. The Final Rule directly regulates our past and current clients, many of whom operate captives that meet the Final Rule's criteria for listed transactions or transactions of interest. CIC Services is contractually obligated to assist our clients in keeping records and filing reports required by the Final Rule.

9. The Final Rule directly regulates CIC Services because we qualify as a material advisor to our clients and their captives under 26 C.F.R. §301.6111-3(b). Complying with the Final Rule requires CIC Services to keep records and file reports with the IRS, both on behalf of our clients, and on our own behalf as a material advisor. These records and reports are onerous and highly detailed, and they must include information on taxpayers who we know or believe have participated in a covered small captive, the captive's claims and loss history, expenses, policy details, shareholder information, and more.

10. CIC Services has fully complied with the Final Rule since its effective date. CIC Services will continue to comply with the Final Rule so long as it remains in force.

11. The Final Rule imposes significant compliance costs on CIC Services. Our total out-of-pocket costs for complying with Notice 2016-66—the Final Rule's predecessor, which imposed similar recordkeeping and reporting requirements—was approximately $100,000 per year. The costs

of complying with the Final Rule since its effective date have been no less. Nearly all these compliance costs reduce CIC Services' bottom line and are not passed on to our clients.

12. Complying with the Final Rule diverts resources from our normal client services. The Final Rule's recordkeeping and reporting requirements apply on an ongoing basis to each captive insurance transaction, which makes complying with the Final Rule a year-round effort. CIC Services is a relatively small firm. Given our scarce resources, time and effort spent complying with the Final Rule causes inefficiencies and delays in our client services unrelated to the Final Rule. The added stress of complying with the Final Rule also reduces company-wide morale and makes hiring new staff more challenging.

13. In our experience, the Final Rule will raise the cost of our Errors and Omissions insurance premiums. E&O insurance providers consider firms that advise on listed transactions and transactions of interest to be high risk. After the IRS issued Notice 2016-66, CIC Services' E&O insurance premiums increased from $19,000 per year in 2016, to $49,000 per year in 2021. CIC Services' E&O coverage could also be outright denied at any time.

14. Further, CIC Services is unsellable at any reasonable price so long as the Final Rule remains in force. Many loan covenants and purchase and sale agreements require companies to represent and warrant that they have not been involved with reportable transactions and/or are not subject to any governmental investigations.

15. The Final Rule will cause some current clients to end their captive arrangements and terminate their relationship with CIC Services. We lost over 50 clients as a result of Notice 2016-66, many of whom specifically cited the notice as their reason for leaving. This caused CIC Services to lose over $500,000 in revenue per year, and I reasonably expect losses to be significantly greater as a result of the Final Rule due to it designating many small captives as listed transactions and not merely transactions of interest. The Final Rule also dissuades new clients from engaging CIC Services to help

3

Case 3:25-cv-00146-TRM-JEM    Document 21-1    Filed 08/14/25    Page 3 of 5
PageID #: 174

them form and operate a small captive. Based on our experience with Notice 2016-66's effect on our business, I estimate the Final Rule will cost us at least 20 new clients per year over the next four years, depriving CIC Services of an additional $300,000 per year or more of incremental gross revenue.

16. The Final Rule causes CIC Services reputational harm and loss of goodwill. The Final Rule designates CIC Services as a "material advisor" to, and "promoter" of, tax abuse transactions. After the IRS issued Notice 2016-66, some clients screamed at our employees and accused us of involving them in illegal conduct. One client even sued us. This damages our business reputation and causes psychological harm to our employees.

17. The Final Rule creates the risk of civil and criminal liability for CIC Services and its officers. The IRS threatens severe civil penalties against CIC Services and its officers for any alleged failure to comply with the Final Rule's requirements. *See* 26 U.S.C. §§6707, 6707A. If the IRS accuses CIC Services of a "willful" violation of the Final Rule's requirements, we could face criminal punishment including prison time. *See* 26 U.S.C. §7203.

18. Money cannot compensate CIC Services for reputational harm, loss of goodwill, employee stress and emotional harm, or the threat of criminal liability. As for the financial harms that the Final Rule causes, I understand that CIC Services cannot recover money damages from the IRS due to the United States' sovereign immunity.

19. To alleviate these irreparable harms, CIC Services needs at least an injunction that bars the IRS and Treasury Department from enforcing the Final Rule against CIC Services, as well as its past, present, and prospective clients and affiliates. The injunction must cover past clients and affiliates because the Final Rule's requirements apply retroactively to past transactions and CIC Services has continued reporting obligations with respect to those transactions. The injunction must also cover prospective clients and affiliates because CIC Services' ability to attract new clients and grow its

4

business is severely limited so long as small captives are designated as listed transactions or transactions of interest.

20. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2025.

_____
Sean King